Case number 13-1928, United States of America v. Castle, Deckman's, Jackson, Arguments Not to Exceed, 15 minutes versus 5. Mr. Korn for the appellate. Good morning, Judge Keith, Judge Clay, Judge McKeague. Good morning. Would you like to keep any time for rebuttal? Yes, I'd like to reserve 4 minutes for rebuttal. I raised three issues in my brief. I will begin with the second issue, which is the decision of the trial judge to exclude evidence of a key witness, and in so doing, denying Mr. Jackson his constitutional right to present a complete defense. Did you object to that counsel? Yes, and let me just say, I did not do the trial. I was appointed after the trial to do the sentencing and the appeal, but yes, there was a discussion on the record as to whether or not Ms. Page, who was the only witness that the defendant had called in his defense, and his defense was that the police did find a gun in his coat pocket, but he put on the wrong coat and did not know the gun was in the pocket, and he wanted to ask Ms. Page, who was his girlfriend for two years, and she was in the car with Mr. Jackson, the defense wanted to ask Ms. Page if, during the two years that she had a relationship with Mr. Jackson, she's ever seen Mr. Jackson with a gun, and whether she has ever known Mr. Jackson to carry a gun. There was an objection by the government that this would constitute improper character evidence, and therefore was not admissible. At that point, was there an objection by defense counsel? You know, I'd have to go back and look at the... That's critical to this case. It is critical, and I would agree, and I'd have to go back and look at the transcript, but I think, and I may be wrong, and I would ask the court to go back and actually look at that part of the transcript. I do think you may be right, Judge Keith, that there was a discussion, and it's clear to me that the defense attorney wanted to ask these questions, but then when the judge came back and said... Whether or not, during your relationship with Mr. Jackson, you had ever seen him with this specific gun, and whether or not you've known him to carry this specific gun, and my recollection is that I think the defense attorney may have said, That's okay, Your Honor, in which case, I think it's a real gray area, whether that constitutes a withdrawal of your motion or not, because having tried a lot of cases, it's just... You know, you raise the objection, and then when the judge makes a decision, you're showing good faith deference, I think, that we accept the judge's decision, but I'm not sure that that amounts to withdrawing the objection. But, again, I'd have to look specifically at the transcript, and I do think that is a gray area. I do think, though, that the court's ruling that Ms. Page could not testify that during the course of her relationship, she has never seen Mr. Jackson with a gun, and has never known Mr. Jackson to carry a gun, is erroneous. And the reason why it's erroneous is, one, I don't think Ms. Page testifying that during the two years that I've known him, I have never seen him with a gun, is character evidence. That's a fact. Certainly, if I was on trial for possession of drugs or whatever, my wife, who's been with me for 36 years, I think, should be able to come in court and say, during the 36 years that I've lived with this man, I've never seen him with any drugs. To water that down to, you know, it's my opinion that he doesn't do drugs, or I've spoken to people in the community, and based on what they tell me, his reputation for being in possession or doing drugs, he doesn't have that kind of reputation, seems to me to be, under the facts of this case, that would be an erroneous decision. Isn't this just the flip side, though, of should the government be able to put on a witness that says, yes, they have seen your client with a different gun at another occasion two years before? You'd go crazy over that, wouldn't you? I probably would. But on the other hand... Isn't this just the flip side of that? And I do believe there was a discussion on the record. I think the government made it clear that they may, in fact, they didn't say they had that kind of witness, but they may, in fact, want to put on a witness to say that he has carried a gun. But, again, I certainly would object because... But they'd have to offer it for a limited purpose under 404B, right? That is correct, although... And that says you've got to have one of these specific purposes, not just for character. That is correct. That is correct. And I would agree that that would make it more complicated, and the resolution of that issue would certainly be complex. But I think the bottom line here is that her testimony was not character evidence and should have been admitted, even if you wanted to consider it character evidence. I think it would be admissible character evidence if it was, and I don't think it was. But her saying, I have never known him to carry a gun, comes awful close to, in my opinion, he doesn't carry a gun. But, anyway, it's a very complex issue, but the bottom line is I don't think that it constitutes character evidence, and I think the decision of the judge to keep that out was erroneous. In fact, I think that it was more harmful to restrict her testimony to, I've never seen him with this gun, I think forces the defense attorney into a position where he's asking a witness a question that suggests to the jury that maybe she's seen him with other guns, but she's never seen him with this specific gun. So I think it goes beyond just denying important relevant evidence, but also forcing the defense attorney to frame the question in such a way that I think it's more harmful than helpful. Again, there's a question of whether or not the error was harmless, and I would say given the defense in this case, and given that this was his only witness, I think it definitely, it cannot be said, and I realize that we have the, you know, we're dealing with an evidentiary issue, but on the other hand, you're dealing with a constitutional issue as to whether or not he was denied his right to present a complete defense. If it's not character evidence, then what's its relevance? Oh, I think it's very relevant because... It's relevant that she never saw him with a gun, so that's relevant as to whether he did or didn't have a gun on this occasion? I think so. So then somebody else saying, yes, he does normally carry a gun, not this gun, but some other gun, that would be relevant? It all goes to you did it before, so you must have done it this time, or you didn't do it before, so therefore you didn't do it this time, and that you can't do. Let me just say that if the prosecutor came forth with a witness who would say, I have seen him on other occasions in possession of a gun, then I think the relevance of that question becomes she's not saying he doesn't carry a gun. She's not saying he doesn't have the character to, you know, to not carry a gun. What she's saying is that I've never seen him with a gun and I've never known him to carry a gun, and I think it is relevant because she was in the car, and I think evidence submitted by the prosecutor that he may have carried a gun or he carried a gun on other occasions is not relevant because it doesn't mean that she's not telling the truth or it doesn't even impeach her testimony that she's never seen him with a gun. Or never known him to carry a gun, and I think under those circumstances that would not be admissible because it is certainly more prejudicial than probative and would be not admissible under 403. So I think given that his denial, that he was denied his right to present a complete defense warrants a new trial in this matter. Thank you. Thank you. Good morning. Good morning, your honors. May it please the court, Christopher Osthorn for the United States. I'm going to ask that you affirm the district court's rulings and deny the defendant's claims of error. I'll begin with the second issue since that is the one that the appellant has focused on specifically. I was reviewing the transcript and I believe that Judge Keith is correct. I don't see an indication there was an objection to the government of the proper evidence of the defendant's character for non-possession of firearms. But once the ruling was made by the district court, I did not see any objection by the defendant at that point. And I do think that the ruling by the district court was correct. That there was several, the defendant's character for non-possession of firearms, and again this is an abuse of discretion standard because it is an evidentiary ruling. This court has ruled in Lucas that a complete defense does not apply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence. That in that case and in Armstrong, the court has limited the ability of defendants to enter. And it's a different circumstance, but convictions of third parties in order for defendants to further their own defense. In the district court rested on three rulings. Silber, which is a case out of this court where a physician who was accused of overbilling could not offer evidence of other cases in which he did not overbill patients or receive overbilling notices. A second circuit case, Benedetto, where a defendant meat inspector could not bring in evidence from other meat packers when he was accused of bribing them, that he did not attempt to bribe those other meat packers. And then also in Chan, which just basically also states that character evidence is limited to reputation and opinion testimony and cannot extend to specific instances of conduct. I think that is what the defendant was attempting to offer in this particular circumstance. And I think the court was correct in excluding that evidence. The court actually went further, allowing the defendant to present evidence of his historical possession of the firearm in question. While the defendant considers that more harmful, the defense counsel had a choice whether or not at that point, given that ruling, to ask that question at all regarding the historical non-possession of the charged firearm or whether to simply ask about his possession of firearms on that day. Even if that were error, I believe it's harmless error because the gun was recovered from the defendant's pocket and beyond that there was the jail calls that were placed into evidence, which demonstrated an attempt by the defendant to try to get someone else essentially to take blame for the firearm and to say that it was his jacket. And that was actually the furthest with this jacket argument that was advanced because at the trial the girlfriend admitted that she could not remember where the jacket, could not remember the specific jacket that was put on. And also this was after it left her house. And she stated that no one at her house ever complained of losing a jacket after that point. So there was never any affirmative evidence presented to support the wrong jacket defense. That then leads to the defendant's third claim with regard to the jail calls and that there was ineffective assistance of counsel for failing to object to the jail calls. The defense cites Woodruff, 735 F3D 445, a case from last year from this court, but to support the idea that this court can address on direct appeal claims of ineffective assistance of counsel. However, the same deficiency that caused this court to reject that claim in Woodruff exists here. There was no, just as in Woodruff where there was no affidavit from the trial counsel discussing the particular decision, there was no affidavit from trial counsel submitted by the appellant here. Then going to the first of the claims made by the defendant, the stop and pat down or search of the defendant in this case, the defense focuses specifically on the idea that there was the lane change, the impracticability of staying in one lane under the cases of Gross and Freeman. There were actually four separate bases upon which to stop the defendant on that evening. There was the reason specifically cited by the district court, which was an improper lane change, a violation of, I believe, 257.648, subsection 1, which is changing lanes, which the court found the defendant did by crossing over the lane without signaling. That's from the district court's decision. Also, there is traveling in the left lane while not overtaking or passing another vehicle, which both troopers testified to that the defendant committed by traveling in the left lane. Finally, the statute that the defense relies on in its argument is still violated in this case because this case is factually distinguishable from Gross and Freeman. In Gross, there was a stop on a highway where the highway was narrowing. There was a momentary straddling of the lanes by the car. And that was not found to be a violation of that statute. In Freeman, there was one movement of a tire length over a lane, and that was on a highway where there's often windy conditions by a recreational vehicle. In this case, it's much different because there's multiple swerving. Also in this case, in neither Freeman or Gross, was there a finding or a discussion of erratic driving by the defendant. In this particular circumstance, there was a finding by the district court and testimony from the officers regarding erratic driving by the defendant, which separates it as well. There's nothing also in this case that made it impracticable for the defendant to remain in his lane as there's no background of adverse weather conditions on the record in this particular circumstance. Also, this case lacks the background that Freeman had, where there was a background of drug interdiction stops and stops of that nature. This is a stop at 150 in the morning where there's a concern about driving under the influence. I think also there was reasonable suspicion to stop the defendant for driving under the influence at that time as well, given all the facts that existed.  It's about the time as noted on the record when the bars usually close in Michigan. The defendant was seen straddling the left lane and center lane when he was first observed and they began to follow him. He then swerved twice and prior to even stopping the vehicle, almost came into a complete stop in the left lane. All of those factors together would lead to reasonable suspicion to stop the defendant for operating a motor vehicle while intoxicated. So under all of those bases, there was reasonable suspicion to stop the defendant for driving under the influence as well as three separate traffic violations that probable cause existed for. With regard to the search, there was never really actually a pat-down or search of the defendant prior to the discovery of the firearm. There was, however, reasonable suspicion as found by the district court. The time of night that the stop occurred at, the indications of possible intoxication, and the placing of the papers back in the car in a manner that was not within the way the trooper told him to do so, as well as the repeated ignoring of the trooper's instructions to exit the vehicle more than justified a pat-down, which never actually occurred. Instead, the defendant was taken out of the vehicle at that point, and when he was resisting the officer, he was pushed up against the vehicle, and he then felt the firearm, which the other trooper then removed from the defendant's pocket. I'm just curious analytically why this is not the equivalent of a pat-down. I understand your position that it's not the normal thing of stand there and spread your legs, lean against the car, and you frisk somebody, but why does a pat-down have to occur by use of your hands versus your two bodies encounter each other, and you feel through your hip or whatever it was here that he had a gun in his pocket? I'm not sure analytically that there's a difference. The reasonable suspicion here, had they been patting him down, which I would have assumed at the point that they're pulling him out of the vehicle, would have been the next step. He was certainly seized when Trooper Cain pulled him out of the vehicle after his hands weren't visible to Trooper Cain and he was refusing the instructions to get out of the vehicle. The argument is going to be there are these furtive gestures, so they drag him out of the car. At that point, it seems to me they would have had the ability to pat him down. I just don't see why it matters whether it was his hand or you're hugging the guy and you feel drugs or a gun or something in their coat. No, I don't think that it's... If we don't analyze it under a pat-down, then what do we analyze it under? No, I think that the pat-down would be the way to analyze it. I think that I agree with the court there. I guess the only difference is that factually that's not... Analytically, I think it's the best way to analyze it. It wasn't the traditional pat-down, is your point? Yes, it wasn't the traditional pat-down, and then beyond that as well, I think it would be still what would be allowed to seize him, so I think it would be the same reasonable suspicion there, and so I don't think that I agree with the court. There's not analytically a difference. I think that factually, though, a pat-down isn't really what occurred because they immediately felt it upon when he was up against the vehicle. But I do agree with you that it's the same analysis. And I think given what was happening, the time of night and the indications of intoxication, that there was reasonable suspicion in that circumstance to pat the defendant down. So for all of those reasons, because the district court's ruling was correct as to the constitutional right to a complete defense, and certainly it was not an abuse of discretion, and even if the court were to find so, I believe it was harmless error given the overwhelming evidence of guilt in this case, because the ineffective assistance claim is premature and because there was reasonable suspicion and probable cause to stop the defendant and reasonable suspicion existed to pat down the defendant, that the court should deny the defendant's claims of error and affirm the conviction. Thank you. Thank you. Rebuttal? Yes, Your Honor. Judge McKeague, let me say that I do agree with you that the pushing Mr. Jackson up against the car did constitute a de facto pat-down. But it would be my position that at the point that they did that, they had no reason to believe that he was armed and dangerous. They stopped him. They asked him to get out of the car, which he did. He gave them certain paperwork, and this is looking at it in a light most favorable to the court's decision. The police gave him some paperwork, asked him to put the paperwork in the car, which he did. Then, because they felt that he didn't put it down on the seat like other defendants, it looked like he was trying to put it into the console or the console area, they asked him to get out, and he wasn't done putting the paperwork away, so they pulled him out, and that's when they pushed him up against the car. And it would be my position. What you're missing is they ordered him, I've forgotten, two or three times to stop doing what he's doing. He refused. That is correct. And they couldn't see his hands. That is correct. They construed that as posing a potential threat. It just seems to me we have dozens of cases that are almost, they don't involve pulling somebody out of a car, but it's furtive gestures in a car or out of a car or putting your hands behind you or whatever. You're not sure what the guy's doing. So from that you conclude that he may have something harmful on him and you pat him down. How is this different than the run-of-the-mill pat-down case? Well, I'd say it's different because I don't think the fact that the police can't see his hands, I don't think in this case there was really a furtive gesture. I don't think that because the police could not see his hands and then therefore weren't sure of the situation is not enough to constitute reasonable suspicion. So he's reaching for the console. Let's assume he doesn't get the console open. He's got a gun between the seat and the console that he's reaching for. He gets that gun in his hand. They can't drag him out of the car because they haven't seen what's in his hand? That's the whole point of dragging him out of the car. Well, I guess my position is, Your Honor, that they asked him to get back in the car and put the paperwork away, which he was doing, and because it took him longer than they anticipated does not seem to me to give them a reasonable basis to believe that he was armed and dangerous, and therefore they had no basis to do a pat-down under those circumstances. Let me say that, very briefly, with respect to Argument 3, the government's position is that the issue is premature. I would say that it's not. I cannot fathom a sound trial strategy. Why, when the government is going to present these telephone calls and transcripts to the jury, that you wouldn't redact the transcripts so that the jury doesn't know that he was in jail? Even the judge called up the defense attorney and said, I think we may have a problem here, and the defense attorney just let it go, and that's clear on the record. And I think the case law in this case, especially with issues with biased jurors Why would that not be harmless error, given the strength of the evidence here? There's no dispute he had the gun on his person. He doesn't argue about that. He has this defense, apparently, that, gee, it's not his code, he didn't know he had the gun. The jury heard all of that. So I'm just curious, from your perspective, how would the fact that he was in jail at the time of some conversation, whatever that was, why would that matter? Well, because I think in this case, the fact that the jury knows that he's in jail, especially during the pendency of this matter, suggests to the jury that he's a dangerous person. And I think given that the defense is, I didn't know the gun was in the coat, I think that is very prejudicial, and I think it would not be harmless error. And I think on that basis, he would be entitled to a new trial. Thank you. Thank you, and the case is submitted. May call the next case.